IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CARL EDWARD DODSON,

      **Plaintiff,**

v.                                           **CIVIL ACTION NO. 1:10cv139**
                                                           **(Judge Keeley)**

**BUREAU OF PRISONS,**
**BRESCOACH, Health Services Administrator,**
**LT. GUY, Lieutenant,**
**ZIEGLER, Warden**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The pro se plaintiff initiated this case on August 10, 2010, by filing a civil rights complaint against the above-named defendants. On October 18, 2010, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on November 22, 2010. On December, 2010, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day. On March 11, 2011, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support. A Roseboro Notice was issued on March 14, 2011, and on June 1, 2011, the plaintiff filed a timely response.[1]

### II. The Complaint

---

[1] Memoranda and other materials in Response to a dispositive motion are to be filed within twenty-one days from the date of service of the Motion, unless otherwise ordered by the Court. See LR PL P 11.2. In this case, the plaintiff timely requested and was granted an extension of time through June 3, 2011 to file his response.

The plaintiff is a federal inmate, who is incarcerated at the Federal Correctional Institution in Morgantown, West Virginia. ("FCI Morgantown"). In his complaint, the plaintiff alleges that the health services staff at FCI Morgantown have violated his Eighth Amendment rights by failing to treat his lower back pain, urological issues, and alleged Lyme disease. In addition, the plaintiff alleges that health services staff retaliated against him for complaining about his medical care. The plaintiff also alleges that former FCI Morgantown warden, Ziegler, prevent him from exhausting his administrative remedies by failing to respond to his BP-9 remedy submissions. Finally, the plaintiff alleges that on January 6, 2010, Lt. Guy ordered him do extra work by shoveling snow from the sidewalk even through he had work restrictions due to a back injury. For relief, the plaintiff seeks proper diagnosis and treatment of his current medical conditions, treatment of his Lyme disease, and a stop to the "harassment and retribution" of staff at FCI Morgantown.

### III. The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

A. The defendants Brescoach, Waters, Guy and Ziegler were sued in their official capacities, not in their individual capacities;

B. The plaintiff failed to exhaust his administrative remedies;

C. <u>Bivens</u> liability may not be premised on a theory of *respondeat superior*;

D. The plaintiff claims against defendant Ziegler should be dismissed for lack of personal involvement;

E. The plaintiff fails to establish a violation of the Eighth Amendment;

F. The plaintiff's allegations of retaliation fail to state a claim; and

G. The defendants are entitled to qualified immunity.

## IV. The Plaintiff's Response

In response to the defendants' Motion to Dismiss or, for Summary Judgment, the plaintiff asserts that the health services staff at FCI Morgantown provided false information when they state that he failed to provide his civilian medical records establishing a diagnosis of Lyme Disease. The plaintiff notes that his civilian medical records were included in his PSI. Moreover, the plaintiff alleges that a copy of his Social Security Disability record, which states that he has been diagnosed with severe impairment of Lyme Disease was provided to the medical staff at FCI Morgantown and is contained in the records submitted by the defendants in support of their Motion for Summary Judgment. The plaintiff also maintains that the blood test given to him at FCI Morgantown, Simple Lyme Titer Test, is not at all reliable. The plaintiff also alleges that the Emergency Room staff at Ruby Memorial Hospital recommended that he be seen by a urologist by July 20, 2010, which did not happen. The plaintiff also alleges that his CT Urogram was disapproved by the defendants on July 29, 2010, and was not approved until he turned his Medical Power of Attorney over to his mother. The plaintiff further maintains that although the urologist report, dated November 19, 2010, indicates that his urine would need to be monitored to make sure that the amount of blood does not increase, there is still blood in his urine, and he has had only one urine test done since November 19, 2010. With respect to his back, the plaintiff alleges that although he entered FCI Morgantown with deteriorated discs and bone spurs, he did not have a herniated disc until he fell on October 22, 2009, while working in the ceiling of the Health Services Building and struck his lower back on a steel I-Beam. The plaintiff alleges that the defendants waited almost nine months from the date he fell before sending him to hospital for an MRI on July 12, 2010. Moreover, the plaintiff maintains that neither he nor his mother were told that he had

3

a herniated disc, but rather he was told only that he has a little arthritis settling into his spine. He maintains that he did not know he had a herniated disc until he received a copy of his medical history from the health services staff on December 3, 2010. The plaintiff asserts that although the defendants state that his recommended course of treatment is to manage his pain through medications, activity restrictions, and physical therapy until such time as his condition changes, he was made to go back to work on October 20, 2010 and has not received physical therapy since February 9, 2010. The plaintiff maintains that it is obvious that he is being targeted by staff at FCI Morgantown due to the fact that he has received incident reports and been punished for missing medications which he was taking voluntarily. The plaintiff maintains that his placement on the Special Housing Unit ("SHU") Hot List is further proof of retaliation. With respect to his being made to shovel snow, the plaintiff maintains that he tried to explain to defendant Guy about his lower back pain, but Lt. Guy chose to ignore him. Finally, with respect to his administrative remedies, it appears that the plaintiff alleges that on January 11, 2010, he submitted an administrative remedy requesting that health services acknowledge his disability and provide treatment and therapy. He maintains, however, that the warden never acknowledged or answered his administrative remedy, and consequently, the Regional Office rejected his remedy on January 20, 2010, because he failed to submit this remedy at the institutional level.

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring

6

the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## VI. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted **prior to** filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

---

[2] Id.

7

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

A review of the plaintiff's administrative history in SENTRY reveals that the plaintiff has filed a number of administrative remedy submissions since his designation to FCI Morgantown on April 6, 2009. However, some have nothing to do with the instant case, including submissions regarding denial of a lower bunk pass. (Doc. 43-2).

However, the plaintiff filed Remedy ID No. 573483-R1[3] on January 19, 2010 at the Regional Office level. The submission was rejected by the Regional Office on January 20, 2010, and the plaintiff was told that he failed to submit his remedy at the proper level, the institution level, and that he needed to first submit and receive a response from the institution level before appealing that

---

[3]The defendants failed to attach the Sentry records for this remedy. However, from the attachments to the plaintiff's reply, it appears that the plaintiff sought to complain about health services failure to treat his "disabilities" or provide therapy for his lower back pain. It also appears that he wanted treatment and acknowledgment of his Lyme Disease. Finally, it appears that he he sought to grieve Lt. Guy's order that he shovel snow despite his severe medical problems. (Doc. 5-3).

8

response to the Regional level. The plaintiff did not thereafter file a remedy submission on that topic at the institution level.

The plaintiff filed Remedy ID No. 610782-F1 at the institution on October 13, 2010. This submission was rejected by the institution on October 13, 2010, because the plaintiff failed to provide specific information about his request within the main page or a continuation page of the remedy submission.[4] He was instructed to re-file his remedy within five (5) days of the remedy submission. However, the plaintiff did not re-file this remedy.

The plaintiff also filed Remedy ID No. 610778-F1[5] at the institution on October 13, 2010. The submission was rejected by the institution on October 13, 2010, because the plaintiff failed to provide specific information about his request within the main page or a continuation page of the remedy submission. He was instructed to re-file his remedy within five (5) days of that rejection notice. Instead of resubmitting within 5 days, the plaintiff submitted Remedy ID No. 610778-F2 on October 25, 2010. He received a Warden's Response limited to information or explanation only on November 1, 2010. The plaintiff appealed this submission to the Regional Office level on November 24, 2010, with Remedy ID No. 610778-R1. This submission was not answered by the Regional Office, and so the plaintiff appealed this submission to the Central Office level with Remedy ID No. 610778-A1 on February 7, 2011. In the interim, the Regional Office denied his submission on February 25, 2011. However, as of March 8, 2011, the Central Office had not yet

---

[4]The abstract of this remedy indicates that it dealt with "blood in urine." (Doc. 43-2, p. 11).

[5]The abstract of this submission indicates it has to do with health services failure to see him regarding his injured foot. However, nowhere in the complaint, can the undersigned find any allegations regarding an injury to his foot. (Doc. 43-2, p. 10).

responded, and the response was not due until March 19, 2011.

Accordingly, the defendants argue that the plaintiff failed to file and provide the Bureau an opportunity to respond to his requests at each administrative level. Therefore, the defendants argue that the plaintiff has failed to exhaust his administrative remedies, and his claims should be dismissed.

In response, the plaintiff makes two arguments. First, with respect to Remedy ID No. 573483-R1, which was rejected because he failed to submit it at the institution level, the plaintiff argues that he did in fact submit this remedy at the institution level, but the Warden never acknowledged it. The plaintiff has submitted his BP-9, bearing his signature dated January 11, 2010. The Warden has twenty (20) days to respond to a BP-9[6], and the plaintiff filed his Regional Appeal on January 19, 2010, without giving the Warden a twenty day opportunity to respond. Because he failed to follow the directive to re-file at the institution within five (5) days, his administrative remedy regarding back pain, Lyme's Disease, and shoveling snow is clearly not exhausted.[7] Second, with respect to Remedy ID Nos. 610782-F1 and 610778-F1, which were rejected because the plaintiff failed to provide specific information about his request within the main page or a continuation page of the remedy submission, the plaintiff alleges that he has been having trouble

---

[6]28 C.F.R. § 542.18.

[7]The Supreme Court has held that "proper exhaustion of administrative remedies...'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 89 (2006)(quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). "To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim.',,,,Thus, the inmate must actually and strictly comply with the requirements of the administrative processes." Nicholas v. Ozmint, 2006 WL 2711852, at *7 (D.S.C. September 20, 2006)(quoting Pozo, supra).

10

with his Remedy Forms reaching their destination with the continuation pages still intact. However, even if true, the fact remains that the plaintiff did not initiate either of these remedies until two months **after** he filed the complaint in this matter[8]. Therefore, he could not have completed the administrative process before filing suit. Accordingly, the plaintiff failed to exhaust his administrative remedy regarding blood in his urine, as well. Moreover, the plaintiff has never attempted, at least not as of the date he filed his complaint, to pursue administrative remedies regarding his allegations of retaliation on the part of health staff.

## VII. RECOMMENDATION

In consideration of the foregoing, it is recommended that plaintiff's complaint be **DISMISSED** for failure to exhaust his administrative remedies.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

[8]The undersigned notes that this matter was opened on the plaintiff's behalf on August 10, 2010, using a letter sent to Judge Keeley by the plaintiff. On September 7, 2009, the Clerk of the Court sent the plaintiff a Notice of Deficient Pleading advising him, among other things, that he must complete a complaint on the Court's approved form. The plaintiff complied and submitted the form complaint on September 29, 2010. Even using the September 29, 2010 date, the plaintiff did not initiate the grievance procedure until after he filed suit.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket sheet and to counsel of record via electronic means..

DATED: June 27, 2011

    /s/ Jame E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE